981 F.2d 1252
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of AMERICA, Plaintiff-Appellee,
v.
Darrell L. PADGETT, Defendant-Appellant.
 No. 92-5136.
 United States Court of Appeals,
Fourth Circuit.
 Argued: October 2, 1992
Decided: December 16, 1992
 
 Appeal from the United States District Court for the Southern District of West Virginia, at Bluefield. Elizabeth V. Hallanan, District Judge. (CR-91-166-1)
 ARGUED: Matthew Anthony Victor, Charleston, West Virginia, for Appellant.
 Hunter P. Smith, Jr., Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 Michael W. Carey, United States Attorney, John C. Parr, Assistant United States Attorney, Charleston, West Virginia, for Appellee.
 S.D.W.Va.
 Affirmed.
 Before WIDENER, MURNAGHAN, and WILLIAMS, Circuit Judges.
 PER CURIAM:
 
 OPINION
 
 1
 On October 31, 1991, Darrell L. Padgett was convicted of committing the offenses of conspiring to distribute cocaine base, distributing cocaine base within 1,000 feet of a school yard, aiding and abetting the distribution of cocaine base, and distributing cocaine base to a person under 21 years of age. The district court sentenced him to a prison term of 450 months and a term of supervised release for six years upon his release from prison. Padgett appeals his convictions and sentence to this court. We affirm.
 
 I.
 
 2
 This case arises out of an undercover narcotics investigation conducted at Tiffany Manor Housing Project in Bluefield, West Virginia. In response to complaints from the residents of Tiffany Manor about crack dealing, an officer of the West Virginia Department of Public Safety and a detective from the Bluefield City Police Department arranged to occupy an apartment at Tiffany Manor during a four-day period in June 1990. While occupying the apartment, the officers gathered evidence of narcotics transactions through the use of surveillance equipment, video equipment, cameras, and confidential informants who wore body wires.
 
 
 3
 Although they had no specific target in mind when they started the investigation, the officers collected evidence that implicated the Appellant, Darrell Padgett. The evidence showed that Padgett was selling cocaine base within 1,000 feet of the Tiffany Manor playground. On June 3 the officers arranged for a confidential informant, who was wearing a body wire, to buy drugs from Padgett. The police obtained video footage and audio recordings of the transaction between the informant and Lisa Lewis, one of Padgett's runners.
 
 
 4
 When the officers observed Padgett leaving the area in a car, the car was stopped and Padgett was arrested. When Padgett was taken from the back seat of the car, the arresting officers saw $1,647.00 in currency on the floor of the back seat the car. The arresting officers seized the money.
 
 
 5
 Padgett was indicted on June 18, 1991 for his activities on June 3, 1991. The conspiracy count of the indictment alleged a conspiracy that lasted from January 1991 until Padgett's arrest. At trial two of Padgett's runners, including Lisa Lewis, testified about their activities for Padgett on June 3 as well as their activities as his runners during the conspiracy period. Four other witnesses also testified about their involvement with Padgett prior to and during the conspiracy period. Ginger Garrett, for example, began selling drugs for Padgett when she was twenty years old. The jury convicted Padgett of all counts contained in the indictment.
 
 
 6
 At the sentencing hearing held on January 30, 1992, some of the witnesses who testified at trial testified again. Additionally, another of Padgett's runners who had not testified at trial testified at sentencing. The new witness supplied information relating to Padgett's possession of a firearm. After hearing all of the evidence, the district court found that Padgett was an organizer or leader of a criminal activity and enhanced his guideline offense level by four points. The district court also found that there was sufficient evidence of Padgett's use of a firearm to justify a two-point enhancement under U.S.S.G. § 2D1.1(b)(1). The district court also enhanced Padgett's offense level by one point under U.S.S.G. § 2D1.2 because of the proximity of Padgett's activities to the Tiffany Manor playground. The district court fixed Padgett's offense level at forty-one and sentenced him to a prison term of 450 months and a term of supervised release for six years upon his release from prison. This appeal followed.
 
 
 7
 On appeal Padgett alleges ten errors[1]: (1) The jury pool did not consist of a fair cross-section of the community; (2) his sentence was improper; (3) the district court's denial of Padgett's motion for a continuance to secure the appearance of additional witnesses was an abuse of discretion; (4) the district court abused its discretion in admitting certain United States currency into evidence; (5) the district court abused its discretion by denying Padgett an opportunity to evaluate independently the video and audio tapes admitted against him at trial; (6) the electronic surveillance conducted by the officers without a court order violated Padgett's Fourth Amendment rights; (7) the district court abused its discretion in admitting Rule 404(b) evidence of a common plan or scheme that related to events not contained in the time period of the acts for which Padgett was indicted; (8) Padgett's arrest was illegal because the officers lacked probable cause; (9) the Assistant United States Attorney withheld Brady material from Padgett; and (10) the Assistant United States Attorney improperly used the grand jury proceedings as a discovery device after Padgett's indictment.
 
 II.
 
 8
 Padgett's first contention is that the jury panel was not composed of a representative cross-section of the community in violation of his Sixth Amendment rights. See Taylor v. Louisiana, 419 U.S. 522 (1975). Federal juries are, of course, subject to the Sixth Amendment representative cross-section requirement. Consistent with these requirements, Congress has established qualifications for federal jurors, procedures for the selection of juries, and procedures for challenging jury selection procedures. 28 U.S.C. §§ 1861-71. A defendant who seeks to challenge compliance with the selection procedures must file a motion to stay the criminal trial before voir dire or within seven days after the defendant discovered or could have discovered that the jury was not selected in compliance with the statute. 28 U.S.C. § 1867. Here, at an evidentiary hearing held eight days before trial, defendant's counsel said that the defendant objected to the low number of blacks on the jury, but defendant's counsel also said that she did not know of any method to call additional blacks to serve on the jury. The district court asked defendant's counsel for suggestions on how it could increase the numbers of blacks on the jury panel and granted defendant's counsel additional time to formulate those suggestions. Although counsel did not provide suggestions within the period established by the district court, the district court nonetheless listened to argument from defendant's counsel on the morning of trial concerning her objection to the method of jury selection and, specifically, to the use of voter registration lists to form the jury pool.
 
 
 9
 There is no evidence in the record that the number of blacks called for jury duty in this case was significantly less than the proportion of blacks in the community or that blacks were excluded, systematically or otherwise, from the jury selection process. Rather, the court had before it only the bald allegations of counsel that the jury selection system was improper because it did not produce a jury that fairly represented a cross-section of the community. We state again for emphasis, however, that there is no evidence in the record to show that the names on the master jury wheel or any other list did not represent a cross-section of the community. We have reviewed the Jury Selection Plan of the United States District Court for the Southern District of West Virginia. Order, In re Review of the Amendment to the Jury Selection Plan Submitted by the United States District Court for the Southern District of West Virginia, 4 Admin. Order Book 435A (4th Cir. Jud. Council Jan. 30, 1989) (Order No. 62). The district court's method of using voter registration rolls to select the jury pool complied with the plan. Further, we have specifically held that the use of voter registration lists as the basis for jury pool selection complies with Sixth Amendment fair cross-section of the community requirements and is sanctioned by Congress. United States v. Cecil, 836 F.2d 1431 (4th Cir.) (en banc), cert. denied, 487 U.S. 1205 (1988); see also 28 U.S.C. § 1863(b)(2) (requiring jury selection plans to specify the use of voter registration lists). There being no factual assertion or proof to support the claim, we find that Padgett's contention has no merit.
 
 III.
 
 10
 Next, Padgett asserts that his sentence was improper because the testimony of government witnesses, which he claims was inherently unreliable, conflicted as to the amount of drugs involved. Padgett also asserts that there was insufficient evidence to support a finding that he possessed a firearm, which was used to enhance his offense level.[2] For sentencing purposes the Government must prove the quantity of drugs involved by only a preponderance of the evidence. United States v. Goff, 907 F.2d 1441, 1444 (4th Cir. 1990). The district court's determination of the amount of drugs is a factual determination that will be disturbed on appeal only if we find it clearly erroneous. Goff, 907 F.2d at 1444. After a review of the record, we find that the district court was not clearly erroneous when it determined that a preponderance of the evidence showed that Padgett had distributed 198 grams of cocaine base. We also find that the district court was not clearly erroneous in determining that Padgett had possessed a firearm.
 
 IV.
 
 11
 Padgett next complains about the district court's denial of his motion for a continuance to secure the testimony of two additional witnesses. The record reveals that the attorney had never talked to the potential witnesses, did not know what their testimony would be, and had not been able to get in touch with them. Under the circumstances, the district court did not abuse its discretion in denying Padgett's request.
 
 V.
 
 12
 Padgett next argues that the district court abused its discretion by admitting into evidence the money that was found on the floorboard of the car in which Padgett attempted to leave Tiffany Manor. Padgett argues that the Government did not prove a sufficient nexus between him and the money such that the money could be admitted. He points to the fact that no fingerprint analysis was performed on the money to prove he handled it, and he also points to the fact that although the money was near him, he was not seen holding it or otherwise exercising ownership over it. The Government argues that there were sufficient facts-although admittedly circumstantial-to link the money to both the offenses and Padgett. The Government relies on the testimony of the officers that they had seen Padgett receiving money and that, on one occasion, they saw Padgett stuff money into the shorts he was wearing.
 
 
 13
 Under Rule 402 of the Federal Rules of Evidence, all relevant evidence is admissible with certain exceptions not applicable here. Fed. R. Evid. 402. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Here, the money tended to prove that Padgett had been receiving money from the drug deals he had made. The officers testified that they saw him with money and, in one case, saw him stuffing it into the shorts he was wearing. It is true that there is no direct evidence that the money on the floor of the car was the same, but after review of the record, we are of opinion that there is enough circumstantial evidence that it was his money to support the district court's admission of it into evidence. We therefore find that the district court did not abuse its discretion by admitting the money into evidence.[3]
 
 VI.
 
 14
 Padgett next contends that the district court erred in failing to order an independent review of the audio and video tapes admitted against him at trial and that the district court should, in any event, have excluded the tapes. The gravamen of Padgett's complaint concerns the fact that the video surveillance was conducted in starts and stops in an effort by the officers to conserve video tape. Padgett claims that these stops and starts were deliberate in an effort to exclude exculpatory material from the tape, or that the stops and starts were the product of intentional editing of exculpatory material from the tapes. The testimony of the officers involved in the taping, both at trial and at an evidentiary hearing, adequately explains the reasons for the stops and starts on the tape. Padgett has offered no evidence of either exculpatory acts that were not included, or of tampering with the tapes. Although we caution that in most instances it would be unreasonable to deny a defendant's expert access to tapes to be used in evidence, in a case such as this where the Government has offered a credible explanation for the stops and starts on the tape and the defendant has offered nothing other than speculation, we find that the district court did not abuse its discretion in denying an independent evaluation or in admitting the tapes into evidence.
 
 VII.
 
 15
 Padgett's next contention is that the district court committed reversible error in admitting into evidence the photographs, videotape, and audiotape collected by the officers because the use of video equipment, cameras, and body wires to record his activities violated his Fourth Amendment rights. Padgett also asserts that the use of these devices without a court order violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. §§ 2510-20.
 
 
 16
 Both of these contentions are without merit. It is well-established that the use of cameras and video equipment that records activity that could be seen with the naked eye ordinarily does not violate the Fourth Amendment. 1 Wayne R. LaFave & Jerold H. Israel, Criminal Procedure § 3.2, at 25 (West Supp. 1991); see also Dow Chemical Co. v. United States, 476 U.S. 227 (1986) (holding that aerial photography did not violate defendant's reasonable expectations of privacy). Further, 18 U.S.C. §§ 2510-20 do not apply to videotaping.[4] See 18 U.S.C. § 2510. Therefore, neither Padgett's Fourth Amendment arguments nor his statutory arguments have any merit.
 
 VIII.
 
 17
 Padgett argues that the district court also committed error when it admitted testimony of Padgett's drug activities that took place prior to the conspiracy period pursuant to Fed. R. Evid. 404(b). We review the district court's ruling under an abuse of discretion standard. United States v. Mark, 943 F.2d 444 (4th Cir. 1991). Padgett argues that the admission of such evidence allowed the jury to convict him on the basis of conduct not charged in the indictment. Although this argument may have some superficial appeal, it is without merit. The evidence of Padgett's prior conduct was not so extensive that it created a risk of the jury convicting him of uncharged conduct, particularly given the overwhelming evidence against Padgett on the conduct actually charged in the indictment.
 
 
 18
 Rule 404 excludes evidence of prior bad acts, subject to some exceptions. Once the Government shows relevance to one of the Rule 404(b) exceptions, such evidence is admissible. See Mark, 943 F.2d at 447-48. One count of the indictment charged Padgett with conspiracy to distribute cocaine base. "[A] defendant's knowledge and intent are clearly elements which the prosecution must prove to establish a conspiracy to violate 21 U.S.C. § 841(a)(1)." Mark, 943 F.2d at 448. Therefore, testimony about the defendant's activities that relates to times that are both within and prior to the conspiracy period are relevant to prove knowledge and intent as well as the common plan or scheme of a conspiracy. See Mark, 943 F.2d at 448. We are thus of opinion that the district court did not abuse its discretion by allowing the prosecution's witnesses to testify about their entire involvement with Padgett.[5]
 
 IX.
 
 19
 Padgett next asserts that his arrest was unlawful because the officers lacked probable cause to arrest him. He bases his claim on the fact that the officers admitted at trial that they did not actually see him with drugs.
 
 
 20
 Here, the officers who conducted the surveillance at Tiffany Manor both had completed training in drug trafficking seminars. Based on the conduct they observed at Tiffany Manor-Padgett's participation in several exchanges, his receipt of money, and his contacts with Lisa Lewis and other runners-and their special training, the police officers reasonably believed that Padgett's activities were consistent with drug trafficking. We hold that the officers therefore had sufficient probable cause to arrest Padgett.[6]
 
 X.
 
 21
 Next, Padgett contends that the Government failed to produce an exculpatory audiotape in violation of the principles of Brady v. Maryland, 373 U.S. 83 (1963). The audiotape in issue records a transaction between a confidential informant, Kenny Thompson, who was wearing a body wire, and Ginger Garrett. The specific statement Padgett seeks is Garrett's statement that Padgett did not have any drugs. Contrary to Padgett's assertions, the audiotape was produced. The defendant and his counsel had an opportunity to listen to the audiotape after the evidentiary hearing on October 21, 1991. On the morning of trial Padgett's counsel and the Assistant United States Attorney discussed with the district court the fact that the audiotape was inaudible and that the statement could be heard on the videotape because it was simultaneously recorded with the video. The district court ruled that Padgett could play that portion of the videotape so that the jury could hear the statement.
 
 
 22
 It is axiomatic that the Government can produce only that which it has. The Government produced what it had-the defective audiotape. There has been no showing of tampering with the evidence, and we find that Padgett's contention is without merit.
 
 XI.
 
 23
 Padgett's final argument, raised for the first time in this appeal, is that after his indictment had been returned the Assistant United States Attorney improperly used the grand jury proceedings as a discovery device to prepare for trial. On the facts before us, we doubt that Padgett has proved his case. Just as fundamentally, however, Padgett had numerous opportunities to object if he had evidence to prove his charge. He could have objected to the grand jury proceedings, made a motion to have his indictment dismissed, or made a motion to exclude the improper witnesses from testifying at his trial. See In re Grand Jury Proceedings, 814 F.2d 61, 70-71 (1st Cir. 1987). However, Padgett pursued none of those remedies. Instead, he asserts that the trial court, acting sua sponte, should have precluded the witnesses complained of at trial. Without deciding whether the district court could pursue such an action, we decline to reach the merits of this issue. We will not consider, on these facts, an issue not raised in the district court. See Singleton v. Wulff, 428 U.S. 106, 120-21 (1976) (stating that it is the general rule that an appeals court will not consider an issue that was not raised in the trial court, but leaving discretion to the courts of appeals to determine when they may take up such issues based on special facts).
 
 XII.
 
 24
 Finding no merit in any of Padgett's arguments, we affirm his convictions and sentence.
 
 
 25
 The judgment of the district court is accordingly
 
 
 26
 AFFIRMED.
 
 
 
 [1]
 Padgett's counsel raised the first seven issues in his brief, and Padgett raised the last three issues in a pro se supplemental brief
 
 
 [2]
 Padgett also argues that the sentencing guidelines are unconstitutionally vague because they do not define "cocaine base," but impose a greater punishment for cocaine base than for cocaine. This argument is without merit
 
 
 [3]
 Further, even if there had not been enough evidence to link the money to Padgett to support a finding of relevancy, the district court committed, at most, harmless error. The evidence against Padgett was overwhelming
 
 
 [4]
 Any audio tapes in evidence at trial were properly admitted, having been taken by informants
 
 
 [5]
 None of the witnesses testified solely about conduct that was outside the conspiracy period. We therefore do not reach the issue of whether a witness may testify about acts that occurred only outside the conspiracy period
 
 
 [6]
 Padgett also argues that the money found near him in the car should be excluded under the "fruit of the poisonous tree" doctrine of Wong Sun v. United States, 371 U.S. 471 (1963). Having found that Padgett's arrest was lawful, we need go no further in the analysis of his claim on this issue