**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Glen MARK, Jr., Defendant–Appellant.**

No. 90–5338.

United States Court of Appeals,
Fourth Circuit.

Argued May 10, 1991.

Decided Aug. 22, 1991.

As Amended Sept. 12, 1991.

David Ferris Tamer, Winston–Salem, N.C., argued for defendant-appellant.

· Harry L. Hobgood, Asst. U.S. Atty., Greensboro, N.C., argued (Robert H. Edmunds, Jr., U.S. Atty., on brief), for plaintiff-appellee.

Before RUSSELL and WILKINSON, Circuit Judges, and HALLANAN, U.S. District Judge for the Southern District of West Virginia, sitting by designation.

## OPINION

HALLANAN, District Judge:

Defendant–Appellant Glen Mark, Jr., appeals from the district court's admission during his trial of extrinsic act evidence and subsequent determination of relevant conduct drug amounts in calculating a base offense level for sentencing purposes.

## I.

On October 31, 1989, a one count indictment was returned against Mark, George Thomas Brincefield, and Michael Vincent Wall charging them with conspiracy to possess cocaine with intent to deliver in violation of 21 U.S.C. §§ 812 and 841(a)(1). More specifically, the indictment alleged that Mark, Wall, and Brincefield had conspired to buy five kilograms of cocaine for $100,000.00 from an undercover agent.

Testimony provided by Government witnesses at the subsequent trial established that in July 1989, Phillip E. Sweatt, Jr., an undercover narcotics agent with the North Carolina State Bureau of Investigation, was introduced to Wall who had been making inquiries concerning the purchase of large quantities of cocaine at the request of his employer, Mark, who operated a garage in Reidsville, North Carolina. During the afternoon of September 27, 1989, Agent Sweatt, who had assumed the undercover persona of a large scale cocaine dealer, travelled to Mark's garage and indicated to Wall that he could supply Mark with five kilograms of cocaine for $100,000.00. After conferring with Mark, Wall responded that the quantity and purchase price was acceptable to Mark.

Mark already had a purchaser for the drugs in mind because Brincefield had earlier offered to pay Mark $22,000.00 for each kilogram he could supply when Mark indicated the previous Saturday that he was in negotiations with Agent Sweatt for the purchase of additional cocaine. Brincefield had met Mark in 1984 and since that time had conducted transactions with Mark on a regular and frequent basis purchasing approximately 80 kilograms from Mark, with payment in excess of $1,000,000.00. Brincefield arrived at Mark's garage on September 27, 1989, shortly after Agent Sweatt's departure. After Mark indicated to Brincefield that he was now in the position to obtain the five kilograms, Brincefield offered to purchase all five kilograms at the same price he had previously offered, in addition to which he proposed to give Mark and Wall each one ounce of the cocaine as a commission. Mark agreed to pay Wall $2,500.00 as a payment for his assistance in arranging the transaction while intending to keep the remainder of the $10,000.00 profit for himself.

Mark and Wall then made arrangements to meet Agent Sweatt at his hotel room in the local Holiday Inn later that same evening to purchase the cocaine. Mark intended to deliver the cocaine to Brincefield at the garage after concluding the transaction with Agent Sweatt. Mark and Wall left for the Holiday Inn in a BMW that was being repaired at the garage. When they approached the hotel, Mark instructed Wall to drop him off at a nearby Gulf station. Wall was to conduct the transaction with Agent Sweatt alone and then return for Mark so they could arrive at the garage together for their meeting with Brincefield. The authorities, however, arrested Wall when he met with Agent Sweatt. They then apprehended Brincefield at the garage, while Mark voluntarily turned himself in later.

Mark admitted after his arrest that he had ridden with Wall to the vicinity of the Holiday Inn and that there was a large amount of money in the automobile but denied having any involvement in the drug transaction. In conformity with his proclamation of innocence, Mark pled not guilty during his arraignment on November 6, 1989, which was held before the Honorable N. Carlton Tilley, United States District Judge for the Middle District of North Carolina. Trial was then scheduled to begin on December 11, 1989. After several brief continuances, Mark's jury trial began on January 16, 1990, before the Honorable Richard C. Erwin, Chief United States District Judge for the Middle District of North Carolina.

During the Government's case-in-chief, pursuant to Fed.R.Evid. 404(b), Chief Judge Erwin allowed Wilberto Rodriguez to testify concerning his previous drug sales with Mark over defense counsel's objections. Rodriguez testified that he had met Mark in 1984 at which time he began selling large quantities of cocaine to him. Rodriguez further testified that by 1985 he was delivering between two and nine kilograms of cocaine per month to Mark in North Carolina. Rodriguez claimed that Mark was one of his largest customers and that Mark had continued purchasing from him until 1989. Rodriguez estimated that altogether Mark had purchased between 80 and 100 kilograms of cocaine from him at an average price of $20,000.00 to $25,000.00 per kilogram. Prior to Rodriguez's testimony, Brincefield had testified concerning his previous drug transactions with Mark without objection.

After the close of the Government's case-in-chief, Chief Judge Erwin denied defense counsel's motion for judgment of acquittal. During the presentation of Mark's defense, defense counsel called several witnesses, including Mark's wife, who testified that to their knowledge Mark had never sold or bought drugs. During such time Mark also took the stand in his own behalf and contended that he had never sold drugs to Brincefield nor purchased them from Rodriguez. Mark claimed during his testimony that he had only ridden with Wall to the vicinity of the Holiday Inn so as to get something to eat. Mark alleged that after he discovered the large amount of money in the car he became suspicious and inquired of its purpose. After being told by Wall that he was going to meet his cousin with the money "to do something," Mark insisted that Wall drop him off at a cafe which happened to be in the vicinity of the Holiday Inn. When Wall did not return for him Mark then called his wife to pick him up at the cafe.

Chief Judge Erwin denied defense counsel's renewed motion for judgment of acquittal at the close of all evidence; and while not having given a limiting instruction concerning the proper use of Rule 404(b) evidence during the testimony of Rodriguez or Brincefield, Chief Judge Erwin did *sua sponte* give a limiting instruction in such regard during his closing charge to the jury. After deliberation, the jury found Mark guilty on January 18, 1990.

On April 19, 1990, Chief Judge Erwin held a sentencing hearing where he adopted the probation officer's assignment of a base offense level of 36 pursuant to U.S.S.G. § 2D1.1 for offenses which involve a total of between 50 and 150 kilograms of cocaine. In doing so, Chief Judge Erwin rejected defense counsel's argument that only the five kilograms charged in the indictment should be used to determine Mark's base offense level and that the probation officer had erred in adding to that amount those drugs involved in previous transactions between Mark and Brincefield. As a result of Judge Erwin's findings, Mark was sentenced to 250 months in prison, five years supervised release, and a $50.00 special assessment. On May 1, 1990, defense counsel filed written notice of this appeal.

## II.

Mark's first contention on appeal is that the district court erred in permitting Rodriguez to testify concerning his prior drug transactions with Mark. Mark claims that such evidence served no valid purpose under Fed.R.Evid. 404(b) while being both unnecessary and highly prejudicial. Mark further contends that such prejudice was heightened by the district court's failure to give a limiting instruction at the time of the testimony as opposed to the time of the final charge.

On appeal, a district court's admission of extrinsic act evidence may only be overturned for an abuse of discretion. *United States v. Haney*, 914 F.2d 602, 607 (4th Cir.1990). Upon review of the record, we conclude for the following reasons that the district court did not abuse its discretion in admitting the testimony of Rodriguez.

Fed.R.Evid. 404(b) provides:

(b) **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

This Court has interpreted Rule 404(b) to permit the admissibility of extrinsic acts when they are "(1) relevant to an issue other than character, (2) necessary, and (3) reliable." *United States v. Rawle*, 845 F.2d 1244, 1247 (4th Cir.1988). We have subscribed to the view of the rule as an "inclusionary rule" which " 'admits all evidence of other crimes relevant to an issue in a trial except that which tends to prove only criminal disposition.' " *United States v. Masters*, 622 F.2d 83, 85 (4th Cir.1980) (quoting J. Weinstein & M. Berger, *Wein-*

stein's Evidence § 404[08] at 404–41 and 404–42 (1979)).

■ Of course evidence which is offered for a proper purpose under Rule 404(b) may still be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403; *accord Masters* 622 F.2d at 87.

■ As noted by the government, a defendant's knowledge and intent are clearly elements which the prosecution must establish to prove a conspiracy to violate 21 U.S.C. § 841(a)(1). *United States v. Pupo*, 841 F.2d 1235, 1238 (4th Cir.), *cert. denied sub nom. Govantes v. United States*, 488 U.S. 842, 109 S.Ct. 113, 102 L.Ed.2d 87 (1988). Thus, Mark has clearly placed these elements directly in issue by his plea of not guilty. *United States v. Kaufman*, 858 F.2d 994, 1005 (5th Cir.1988). We therefore believe that such evidence was offered for a proper purpose under Rule 404(b). Of course, to be relevant the extrinsic act evidence "must be sufficiently related to the charged offense." *Rawle*, 845 F.2d at 1247 n. 3. Where such acts are sufficiently related, the relevance of the evidence "derives from the defendant's having possessed the same state of mind in the commission of both the extrinsic act and the charged offense." *United States v. Dothard*, 666 F.2d 498, 502 (11th Cir. 1982). We find in the case *sub judice* that the extrinsic act evidence provided by Rodriguez's testimony was sufficiently related to the charged offense and clearly relevant thereon.

While Mark does not contest the reliability of Rodriguez's testimony which corroborates and complements that of Brincefield, he does strenuously argue that it was unnecessary. This Court has noted that "evidence is necessary and admissible where it is an essential part of the crimes on trial, *see United States v. Masters*, 622 F.2d 83, 86 (4th Cir.1980), or where it 'furnishes part of the context of the crime.' *United States v. Smith*, 446 F.2d 200, 204 (4th

Cir.1971)." *Rawle*, 845 F.2d at 1247 n. 4. As noted previously, Mark's knowledge and intent are essential elements of the crime with which he is charged. Rodriguez's testimony obviously corroborated the preceding testimony of Brincefield by explaining how and where Mark was able to obtain the large quantities of cocaine which he allegedly had sold to Brincefield. As such, the government is correct in arguing that the extrinsic act evidence offered did not address a purely collateral matter but rather supported the government's central theory that Mark was not an innocent friend of his codefendants but rather was a major cocaine distributor responsible for the transaction at issue. *United States v. Echeverri–Jaramillo*, 777 F.2d 933, 936 (4th Cir.1985), *cert. denied*, 475 U.S. 1031, 106 S.Ct. 1237, 89 L.Ed.2d 345 (1986); *United States v. Hadaway*, 681 F.2d 214, 217 (4th Cir.1982).

Of course, "[n]ecessity must be appraised in the light of other evidence available to the government." *United States v. DiZenzo*, 500 F.2d 263, 266 (4th Cir.1974). Mark relies heavily on the fact that the trial judge questioned the necessity of Rodriguez's testimony in light of the evidence already provided by Brincefield and Wall. We note that the trial judge did indeed question the necessity of such evidence, but we believe that his expressed concerns in such regard appear exaggerated by his failure to enunciate the reasons for which he was admitting the evidence on the record. This Court has held, however, that a "trial court's failure specifically to identify the purpose for which the evidence is offered and admitted [is] not reversible error." *Rawle*, 845 F.2d at 1247. As we have noted, such evidence was certainly relevant in establishing Mark's knowledge and intent, and upon a review of the record as a whole, we do not find the evidence against Mark provided by the testimony of Brincefield and Wall to be so strong and unassailable as to make Rodriguez's testimony unnecessary as we interpret the meaning of that term.

■ Mark's final argument regarding the admissibility of the extrinsic act evi-

dence alleges that the probative value of such evidence was substantially outweighed by the danger of unfair prejudice. Unfortunately, the trial judge also failed to enunciate for the record the results of his Rule 403 balancing test. However, similar to the treatment accorded failures to enunciate the purposes for admission, this Court has held that "[a]s long as the record as a whole indicates appropriate judicial weighing, we will not reverse for a failure to recite mechanically the appropriate balancing test." *United States v. Lewis,* 780 F.2d 1140, 1142 (4th Cir.1986). We believe that a review of the record presently before us as a whole does indicate the appropriate judicial weighing.

Of course, in one sense all incriminating evidence is inherently prejudicial. *Haney,* 914 F.2d at 607. The proper question under Rule 403, however, is whether such evidence has the potential to cause undue prejudice, and if so, whether the danger of such undue prejudice substantially outweighs its probative value. *Masters,* 622 F.2d at 87. We find no basis in the record to conclude that Rodriguez's testimony unduly prejudiced Mark to a degree substantially outweighing the probative value of such evidence,[1] and specifically reject Mark's contention that such evidence was prejudicially broad for the district court cautiously limited the scope of such evidence to the same time period and approximate drug quantities as that previously elicited during the testimony of Brincefield to which defense counsel had made no objection.

■ We also reject Mark's contention that the district court committed reversible error by giving a limiting instruction on the proper use of Rule 404(b) evidence during its final charge to the jury rather than at the time such evidence was admitted. This Court has held that "[undue] prejudice, if any, can be generally obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of the overwhelming evidence of guilt." *Id.* It has been said in this regard that "[i]f a trial judge concludes that the balancing weighs in favor of admitting the evidence, he should ordinarily instruct the jury carefully as to the limited purpose for which the evidence is admitted." *United States v. Sangrey,* 586 F.2d 1312, 1314 (9th Cir.1978).

■ The record indicates that the trial judge did not resolutely refuse to give a limiting instruction at the time such evidence was admitted but rather merely indicated that he would not voluntarily give one without a request by defense counsel. *See* Fed.R.Evid. 105. Defense counsel, however, did not request one at such time nor at any other time. This Court has held that a district court does not commit reversible error by failing to give a limiting instruction for a defendant where one was never requested pursuant to Rule 105. *Echeverri–Jaramillo,* 777 F.2d at 936–37; *accord Sangrey,* 586 F.2d at 1315. Thus, Mark may not now benefit from his own counsel's failure to request a limiting instruction from the trial court at the time of Rodriguez's testimony in accordance with Rule 105. To rule otherwise would be to shift the onus from the party to the court in direct contradiction of the plain language of Rule 105. Alternatively, however, we note our belief that any possible undue prejudice was cured by the district court's limiting instruction given *sua sponte* to the jury during its final charge.[2]

---

1. "It has been said that such 'undue prejudice would seem to require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'" *Id.* (quoting Trautman, *Logical or Legal Relevancy—A Conflict in Theory,* 5 *Vand.L.Rev.* 385, 410 (1951–52)).

2. Mark's contention that a limiting instruction given during a final charge is inherently and fatally deficient because it arrives "too late to change the juror's view of the evidence and its weight" is without merit. Mark provides no authority to this Court which would support a view that a limiting instruction concerning the purpose of Rule 404(b) evidence should be given contemporaneously with the evidence, let alone his view that such an instruction is fatally deficient if not given until the final charge. While we certainly believe that there are arguments

Accordingly, we find that the district court's admission of Rodriguez's testimony did not constitute an arbitrary or irrational exercise of its discretion.

### III.

Mark's final issue on appeal is that the district court erred in finding that the quantity of cocaine attributable to Mark justified a base offense level of 36 points for sentencing purposes. More specifically, Mark contends that the district court erred in adopting the probation officer's assignment of a base offense level of 36 because such probation officer misinterpreted the concept of "relevant conduct" and erroneously included in his calculation a substantial quantity of cocaine which Brincefield had testified he purchased from Mark. Mark maintains that only the five kilograms charged in the indictment could properly be considered in establishing his base offense level.

■ We note at the outset that 18 U.S.C. § 3742(e) provides in pertinent part that: [a] court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts. *Accord United States v. Daughtrey*, 874 F.2d 213, 217 (4th Cir.1989). Accordingly, because a determination of the quantity of drugs involved clearly appears to be a factual finding we must uphold a district court's finding in such regard unless clearly erroneous.

U.S.S.G. § 1B1.3(a)(2) provides that a base offense level shall be determined on the basis of "all such acts and omissions that were part of the same course of conduct or common scheme or plan as the offense of conviction." The "background" contained in the explanative commentary following § 1B1.3 further provides in relevant part that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction."

This Court has held that "because the quantity of drugs goes to the question of sentence rather than guilt, the government need only prove the quantity by a preponderance of the evidence." *United States v. Engleman*, 916 F.2d 182, 184 (4th Cir.1990) (citing *United States v. Powell*, 886 F.2d 81, 85 (4th Cir.1989), *cert. denied,* — U.S. ——, 110 S.Ct. 1144, 107 L.Ed.2d 1049 (1990)); *see McMillan v. Pennsylvania,* 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). We believe that this standard has been met in the instant case.

■ As noted earlier, Brincefield testified to the existence of a long established relationship with Mark, ranging from 1984 until their arrests in 1989, in which he would purchase large quantities of cocaine from Mark at frequent intervals. Brincefield's testimony was both corroborated and complemented by Rodriguez who testified to supplying Mark with large quantities of cocaine during that time period. As contended by the government, Mark's role in the uncharged drug transactions, along with their frequency and regularity as established by the testimony of Brincefield and Rodriguez as well as that of Wall indicate that they were a continuation of

which would support a view that a limiting instruction given contemporaneously with the evidence is more effective because of its temporal proximity and thus the better practice, an argument that such an instruction is fatally deficient if not so given appears to us totally devoid of merit. Certainly, Mark's argument is misplaced here for as we have already noted it is not reversible error for a trial court to not provide a limiting instruction where none has been requested. A trial court thus clearly does not commit reversible error by providing *sua sponte* such an instruction during its final charge. Rather by providing *sua sponte* a limiting instruction when not legally required, we believe that the trial judge acted both wisely and magnanimously and clearly showed greater interest in protecting Mark from any potential undue prejudice once such evidence was admitted than did his defense counsel who failed to ever properly request such an instruction. *See Sangrey,* 586 F.2d at 1315.

the same course of conduct as the conspiracy for which Mark was convicted.

The 80 kilograms to which Brincefield testified when added to the 5 kilograms charged in the indictment against Mark clearly fall within the 36 offense level range of 50 to 150 kilograms of cocaine. Accordingly, we find that the trial court was not clearly erroneous in its adoption of the probation officer's assessment of a base offense level of 36. Consequently, Mark's subsequent sentence of 250 months imposed by the district court was clearly within the statutory limit and we find no extraordinary circumstances which would permit our review thereof. *United States v. Whitehead,* 849 F.2d 849, 860 (4th Cir.), *cert. denied,* 488 U.S. 983, 109 S.Ct. 534, 102 L.Ed.2d 566 (1988) ("Trial courts are vested with broad discretion in sentencing and, if a sentence is within statutory limits, it will not be reviewed absent extraordinary circumstances.").

## IV.

For the foregoing reasons, we affirm the district court's admission of Rodriguez's testimony and subsequent determination of a base offense level of 36.

AFFIRMED.