2 F.3d 1150
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne YEARWOOD, Defendant-Appellant.
 No. 92-5338.
 United States Court of Appeals,
Fourth Circuit.
 Argued: May 4, 1993.
Decided: August 18, 1993.
 
 Appeal from the United States District Court for the Northern District of West Virginia, at Elkins. Frederick P. Stamp, Jr., District Judge. (CR-89-115-K)
 Terence Michael Gurley, Schrader, Byrd, Byrum & Companion, Wheeling, West Virginia, for Appellant.
 Lisa Ann Grimes, Special Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 William A. Kolibash, United States Attorney, Rita R. Valdrini, Assistant United States Attorney, Wheeling, West Virginia, for Appellee.
 N.D.W.Va.
 AFFIRMED.
 Before ERVIN, Chief Judge, and PHILLIPS and NIEMEYER, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Wayne Yearwood, indicted in nine counts for various illegal drug activities, was convicted following a trial of three counts for conspiracy to possess with intent to distribute cocaine and distributing cocaine during the first half of 1988, when he was concluding his time as a student and athlete at West Virginia University in Morgantown, West Virginia. He was sentenced to three concurrent 15-month terms of imprisonment. On appeal, Yearwood principally challenges the government's conduct in providing discovery and several evidentiary rulings by the district court at trial. For the reasons given below, we affirm.
 
 
 2
 * Yearwood contends that the government denied him due process and the right to a fair trial by its late disclosure of the names and expected testimony of witnesses Darrell Miller, Garland Johnson, and Milton Redwine. In response to numerous discovery motions filed by Yearwood in September 1991, including a motion requesting that the government provide notice of other crimes or wrongs not listed in the indictment which it intended to introduce at trial, the government promptly made available a debriefing memorandum of Darrell Miller, who was to be the chief prosecution witness, in which Miller claimed to have purchased cocaine from Yearwood 10 to 15 times during a time period whose beginning date was unspecified and which ran until the summer of 1988. The memo also indicated that Garland Johnson had purchased cocaine from Yearwood during an unspecified period, and that Milton Redwine was a potential target of government investigation, although it did not indicate that Redwine was necessarily a person who had engaged in cocaine transactions with Yearwood. Although the court thereafter set the deadline for disclosure of witnesses at December 31, 1991, two weeks before trial, the parties agreed between themselves to extend the date until January 6, 1992. At that time, witness lists were exchanged, and the government's list included the names of Miller, Redwine, and Johnson, as well as brief summaries of their intended testimony.[1] The next day, the government provided the defense with notice and another summary of the proposed testimony of Miller, Redwine, and Johnson regarding acts not mentioned in the indictment.[2]
 
 
 3
 Yearwood filed pretrial motions to suppress the testimony of Redwine, Johnson, and Miller because of the lateness of disclosure and because it was not related to the indictment. On January 13, 1992, a magistrate judge ruled that the disclosures were timely but reserved to the trial judge the determination whether their proposed testimony about activity not described in the indictment was admissible.
 
 
 4
 At trial the trial judge admitted most of the testimony. Miller, a former West Virginia University student who lived in Morgantown when Yearwood was a student there, testified that he purchased cocaine from Yearwood "anywhere from five to maybe 12 times" during a time period from about January to June or July of 1988. In particular, Miller testified about a transaction in a car on February 19, 1988, in which he obtained a quantity of cocaine from Yearwood and then sold the cocaine to an undercover government informant, Charles Johnson. Garland Johnson testified that he purchased cocaine from Darrell Miller during the year from the summer of 1987 until the summer of 1988 and that Miller told him that his source for the drugs was Yearwood. Johnson further stated that on five to ten occasions he purchased cocaine directly from Yearwood. Milton Redwine testified about three occasions in 1986 on which he purchased cocaine from Yearwood.
 
 
 5
 Yearwood contends that disclosure of the names and proposed testimony of Miller, Johnson, and Redwine was untimely and that the government's use of this untimely evidence of acts not charged in the indictment deprived him of his Sixth Amendment right to "be informed of the nature and cause of the accusation" against him and also violated the Fifth Amendment and Federal Rule of Evidence 404(b). We do not find the arguments meritorious.
 
 
 6
 As both the magistrate judge and trial judge recognized, information concerning Miller and Johnson and their dealings with Yearwood was contained in Miller's debriefing interview which was provided to Yearwood in the fall of 1991, months before trial. Their names were also included in the government's January 6 list of witnesses and its January 7 summary of proposed Rule 404(b) testimony. Likewise, Redwine's name was also included in the debriefing memo, the witness list, and the summary of "other acts" testimony. Redwine's recollection concerning the dates of his dealings with Yearwood did change on the day of trial, but this change was immediately conveyed to defense counsel and was quite minor, with Redwine stating at trial that his dealing with Yearwood had occurred in 1986 rather than 1987 as he had earlier represented. Nothing of significance turned on the change in testimony. Otherwise, Yearwood received adequate disclosure to inform him of the witnesses and testimony, both about the indictment and for purposes of Federal Rule of Evidence 404(b).
 
 II
 
 7
 In addition to the disclosures described above, several days later the government provided Yearwood with a memorandum of an interview conducted with Redwine sometime in 1989 in which he indicated that Brian Jozwiak had purchased cocaine directly from Yearwood while the three men were students at West Virginia University, and advised that Jozwiak would be a probable prosecution witness at trial. This disclosure, however, was made on January 9, 1992, only a few days before trial, and the magistrate judge ruled that the disclosure of Jozwiak as a witness was untimely, recommending that Jozwiak's testimony be suppressed. The magistrate judge's recommendation was subsequently adopted by the trial judge.
 
 
 8
 At trial, however, Yearwood testified in a manner that prompted the district court to admit Jozwiak's testimony on rebuttal. Yearwood now challenges the admission at trial of the rebuttal testimony of Jozwiak. He contends that the trial judge's determination that Yearwood had "opened the door" to Jozwiak's testimony during his direct examination was erroneous and also that aspects of Jozwiak's and Redwine's testimony which concerned activity occurring outside the time period of the indictment violated Federal Rule of Evidence 404(b).
 
 
 9
 During his direct examination, Yearwood stated that he was not guilty of any of the crimes charged in the indictment. When asked whether he had been arrested for any crime, Yearwood replied, "No, I had never been arrested for anything." On cross-examination, Yearwood was asked whether he had ever sold cocaine to Redwine or Jozwiak, to which he answered no. The government was then allowed to call Jozwiak, whose proposed testimony had previously been ruled inadmissible in the government's case-in-chief, as a rebuttal witness to testify about his drug transactions with Yearwood. The district judge determined
 
 
 10
 that the implication from defendant's [direct] testimony was that because he had never been arrested for anything, he had therefore never committed any acts for which he could have been arrested, "opening the door" for testimony along the[ ] lines [of Jozwiak's].
 
 
 11
 Although it would appear from a limited reading that Yearwood's one answer that he had never been arrested "for anything" may be true, against the larger context of his statement he suggests that he had never done illegal drugs or previously engaged in criminal activity of any kind. Immediately after stating that he had never been arrested for anything, Yearwood was asked and testified extensively about his accomplished athletic career and about his lifestyle as a star athlete. He discussed his robust participation in sports as a young man growing up in Canada, which culminated in being named the Canadian Male Athlete of the Year in 1983. He testified that his athletic prowess earned him a full, four-year basketball scholarship to West Virginia University, where he was a member of the men's basketball and football teams. In 1987, Yearwood appeared in the World University Games in Yugoslavia. He stated that he "was in training all the time" during the spring of 1988, and his training regimen included balanced meals, academic study, and intensive athletic practice. He stated that, during his senior year, "I was in constant physical training preparing for the Olympics which were coming up this summer." Yearwood also testified that he passed a drug test in May of 1988, while a member of the Canadian Olympic Basketball team, and that, upon graduation, he worked at an institute for juvenile offenders in Montreal and at the Pennsylvania School of the Deaf. In short, Yearwood's principal defense was that he was the type of individual to whom illicit drug use was completely untenable, and therefore he could not have been involved in the alleged drug activities while he was a student and athlete at West Virginia University. Given the entire tenor of Yearwood's direct testimony, we cannot say that the trial judge's determination that Yearwood opened the door to further questions regarding his involvement in drugs while at West Virginia University by suggesting that he could never have engaged in such behavior was an abuse of discretion.
 
 
 12
 Nor did the testimony of Jozwiak and Redwine violate Federal Rule of Evidence 404(b).[3] At trial, Redwine testified about three purchases of cocaine he made from Yearwood in 1986, and Jozwiak testified that he obtained cocaine from Yearwood through Redwine in late 1985 and the spring of 1986 and also made several purchases of the drug directly from Yearwood. Because Yearwood contended in essence that his involvement in drug use was antithetical to his station in life, the testimony of Redwine and Jozwiak was admissible under Rule 404(b) to establish that Yearwood possessed the requisite state of mind and intent necessary to commit the criminal acts with which he was charged. We concluded that this was a proper use of 404(b) testimony in United States v. Johnson, 634 F.2d 735, 737-38 (4th Cir. 1980), cert. denied, 451 U.S. 907 (1981):
 
 
 13
 [W]here ... a defendant in a criminal case by her own testimony and that of others has deliberately sought as the primary means of defense to depict herself as one whose essential philosophy and habitual conduct in life is completely at odds with the possession of a state of mind requisite to guilt of the offense charged, that defendant may be considered in effect to have forfeited any protection that the first sentence of ... Rule [404(b) ] might otherwise have provided against the type of "other act" evidence here challenged.
 
 
 14
 Moreover, the evidence was also properly admitted in light of Yearwood's explanation for the transaction on February 19, 1988. Yearwood testified that Darrell Miller possessed the cocaine later sold to government informant Charles Johnson when he entered Yearwood's automobile on the West Virginia University campus on February 19 and did not obtain it from Yearwood while inside the vehicle as Miller had testified. Yearwood was in effect arguing that letting Miller into his car when he did not know that Miller possessed cocaine was a mistake or accident for which he should not be held criminally liable. However, each of the transactions that Redwine testified about took place in a vehicle located in a parking lot near the athletic facility on the West Virginia University campus. One of the transactions that Jozwiak testified to also occurred in Yearwood's car when it was parked outside the athletic facility. The testimony of Jozwiak and Redwine thus tended to establish that Yearwood's standard mode of operation in dealing drugs was to sell cocaine from his vehicle on the West Virginia University campus, and was therefore admissible under Rule 404(b) to show the "absence of mistake or accident." See United States v. Mark, 943 F.2d 444, 448 (4th Cir. 1991) ("[T]he extrinsic act evidence offered [under 404(b) ] did not address a purely collateral matter but rather supported the government's central theory that [the defendant] was not an innocent friend of his codefendants but rather was a major cocaine distributor responsible for the transaction at issue."); United States v. King, 768 F.2d 586, 588 (4th Cir. 1985) (evidence of defendant's prior convictions for dispensing cocaine was admissible because it made it more likely that the defendant intended to distribute drugs and was not an innocent friend caught in the wrong place at the wrong time, as the defendant had alleged); United States v. Echeverri-Jaramillo, 777 F.2d 933, 936 (4th Cir. 1985) (evidence of a small amount of cocaine in defendant's possession was admissible under 404(b) because it was relevant to rebut principal defense that the defendant's involvement in the conspiracy to distribute cocaine was mere happenstance), cert. denied, 475 U.S. 1031 (1986).
 
 III
 
 15
 Yearwood next contends that the district court's exclusion of the testimony of Ronald Tucker violated his rights under the Confrontation Clause of the Sixth Amendment.
 
 
 16
 During his direct examination, Darrell Miller stated that he voluntarily became an informant for the federal government because he was "start[ing] a new life," and did not suspect at the time that he was under criminal investigation. As part of his case, Yearwood attempted to rebut that statement by calling Ronald Tucker, an attorney, who was expected to testify about a conversation he had with Miller in 1989 or 1990 when Miller was the chief government witness against a defendant represented by Tucker. Tucker was prepared to say that Miller told him then that he was cooperating with the government because he "had no other choice, they had me for possession, distribution, and a gun." The district court excluded Tucker's proposed testimony under Federal Rule of Evidence 608(b) and, alternatively, held that the testimony would "open[ ] the door for collateral matters that I think should not be considered here."
 
 
 17
 Although Yearwood does not now challenge the court's Rule 608(b) ruling, he contends that Tucker's testimony was independently relevant to show Miller's potential bias as a witness. He contends that exclusion of Tucker's testimony violated his rights under the Confrontation Clause of the Sixth Amendment. See Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986) ("[A] criminal defendant states a violation of the Confrontation Clause by showing that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness....").
 
 
 18
 In the overall circumstances, however, we do not find any abuse of discretion in excluding the testimony of Ronald Tucker. Yearwood was allowed to expose, without limitation, any possible source of bias during cross-examination of Miller. While being cross-examined, Miller restated that he did not know of pending charges against him when he decided to approach federal authorities and turn himself in. When asked whether he soon learned that the authorities did have charges pending against him, Miller stated, "Yes." He was also asked whether he was surprised when he met a particular law enforcement officer, "because you had made some cocaine sales in his presence, not knowing that he was an undercover officer, hadn't you?" Miller answered, "Yes." Miller was further asked on cross-examination about his carrying of a handgun in the course of drug dealing. He stated that he did not realize this exposed him to substantial federal penalties. This testimony tended to establish that Miller may not have known of charges pending against him at the time he first approached the federal authorities but that he became aware of such charges shortly thereafter. The jury was thus made aware of Miller's potential bias in testifying, and the trial court was within its discretion in excluding Tucker's further testimony regarding the matter. See id. at 679 ("[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on ... cross-examination [into the potential bias of a prosecution witness] based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant."); United States v. Greenwood, 796 F.2d 49, 54 (4th Cir. 1986) (same).
 
 IV
 
 19
 Finally, Yearwood contends that the district court's refusal to give a proposed jury instruction defining reasonable doubt prejudiced his right to a fair trial. We disagree, particularly when the record is devoid of any request or inquiry on the subject from the jury. On the contrary, we have often admonished district courts not to attempt to define reasonable doubt. See, e.g., United States v. Love, 767 F.2d 1052, 1060 (4th Cir. 1985), cert. denied, 474 U.S. 1081 (1986). That a district court should be reticent to instruct on the meaning of reasonable doubt is further advised in light of the Supreme Court's recent pronouncement that a constitutionally deficient jury instruction regarding the meaning of reasonable doubt can never be harmless error. See Sullivan v. Louisiana, 113 S. Ct. 2078 (1993).
 
 
 20
 For the reasons stated above, we affirm the appellant's conviction.
 
 AFFIRMED
 
 
 [1]
 The list stated that Miller"[w]ill testify to all counts; witness to defendant's possessions and distributions"; that Redwine "[w]ill testify re: Purchases made from defendant in 1987"; and that Johnson "[w]ill testify re: defendant's possession and distribution of cocaine in 1988 and 1989 and to defendant's intent to distribute in 1989."
 
 
 [2]
 The January 7 summary of testimony stated that Darrell Miller had purchased cocaine from Yearwood on five to 10 occasions in addition to those alleged in the indictment; that Redwine had purchased cocaine from Yearwood on three occasions in the spring and summer of 1987; and that, sometime in 1988, Garland Johnson had accompanied Miller to Yearwood's residence where Johnson understood that Miller obtained cocaine from Yearwood. The summary also noted that Johnson had "snorted" cocaine with Yearwood twice between the fall of 1988 and the spring of 1989, and that, in March of 1989, Yearwood agreed to meet Johnson to sell him cocaine but Yearwood failed to show
 
 
 [3]
 Fed. R. Evid. 404(b) provides that:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.