64 F.3d 660
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Timothy Anthony MOORE, a/k/a Tim Allison, Defendant-Appellant.
 No. 94-5235.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 30, 1994.
Decided Aug. 11, 1995.
 
 Before MURNAGHAN and MOTZ, Circuit Judges, and CHASANOW, United States District Judge for the District of Maryland, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 Timothy Moore appeals his convictions and sentences stemming from his involvement in a drug distribution conspiracy. He alleges three grounds of error. First, he contends that there was insufficient evidence to convict him on three counts of using or carrying a firearm during or in relation to a drug trafficking offense. Next, he argues that the district court erred in permitting the government to introduce evidence at trial that served no valid purpose except to malign his character. Finally, he contends that, because he was convicted of only one substantive drug offense, the district court erred in imposing consecutive twenty year sentences for his subsequent convictions under 18 U.S.C. Sec. 924(c).[1] We find that his arguments lack merit and, therefore, affirm his convictions and sentences.
 
 I.
 
 2
 On October 6, 1993, a grand jury returned a twelve count indictment against Timothy Moore and four others. Moore was charged with, inter alia, (1) conspiracy to possess with intent to distribute and to distribute cocaine base, (2) possession with intent to distribute cocaine base, and (3) and six violations of 18 U.S.C. Sec. 924(c) for using and carrying firearms on separate occasions during or in relation to the conspiracy. At trial, various witnesses testified that Moore was the leader of a drug organization comprised of at least four other individuals and that he instigated numerous violent acts as part of the business of the organization. A jury convicted Moore of conspiracy, possession with intent to distribute, and six violations of 18 U.S.C. Sec. 924(c). He was sentenced to life imprisonment for the conspiracy and possession with intent to distribute convictions, a consecutive five years for the first Sec. 924(c) conviction, and twenty years for each of the five subsequent Sec. 924(c) convictions, to run consecutive to the other sentences and to each other.
 
 II.
 
 3
 Appellant Moore argues that he is entitled to an acquittal on the firearms charges in counts two, seven, and ten of the indictment, because there was not sufficient evidence to convict him of them. These counts charge that, on various dates between October 1991 and June 1993, Moore knowingly used and carried a firearm during or in relation to a drug trafficking offense in violation of 18 U.S.C. Sec. 924(c). For a Sec. 924(c) firearm conviction to stand, there need only be enough evidence from which a jury could infer that "a gun was [Moore's] companion while he engaged in drug trafficking activities and that the firearm facilitated the success of those activities." United States v. Kimberlin, 18 F.3d 1156, 1158 (4th Cir.), cert. denied, --- U.S. ----, 114 S.Ct. 1857, and cert. denied, --- U.S. ----, 114 S.Ct. 2178, and cert. denied, --- U.S. # 6D 6D6D# , 115 S.Ct. 131 (1994). Moreover, all evidence introduced at trial must be viewed in the light most favorable to the government, assuming its credibility, drawing all favorable inferences from it, and taking into account all evidence, however adduced. Glasser v. United States, 315 U.S. 60, 80 (1942); United States v. Giunta, 925 F.2d 758, 764 (4th Cir.1991). In light of these standards, Moore's claims of insufficient evidence lack merit.
 
 
 4
 Count two alleges that Moore violated Sec. 924(c) on or about October 22, 1991. At trial, Steven Roland testified that in the fall of 1991, while playing basketball with friends, someone approached him and asked to purchase a quarter-ounce of crack cocaine. Roland told the person that he "had it." During this conversation, John Wayne Johnson, a known associate of Moore's, walked over and offered to sell the potential customer the crack. The customer, however, elected to buy it from Roland. In response, Johnson said "Well, you know, that's Tim Moore's property. You can't be doing no shit like that." (J.A. at 98.) Three days later Johnson, Moore, and another person, George Cherry, showed up on Roland's door step. When Roland came to the door, Cherry pulled him outside and Moore shot him in the left thigh. Johnson testified that as Moore was preparing to shoot Roland, Moore said "Where's my money at? You know you owe me some money." (J.A. at 48.) From this evidence, a reasonable jury could conclude that Moore shot Roland for depriving Moore's drug organization of proceeds from a drug sale three days previously and that, therefore, his use of a gun was incident to, and facilitated the success of, the conspiracy to distribute cocaine.
 
 
 5
 Count seven alleges that Moore violated Sec. 924(c) in or about August 1992. At trial, Jacqueline Coleman testified that, in August of 1992, while she was present at a house occupied by her son, Johnny Coleman, and his girl friend, Parris Moss--both of whom sold drugs for Moore--Moore showed up and began complaining about the condition of the house and putting down her son, who was not present. Specifically, she testified that, while at the house, Moore complained that "things [weren't] up to [the] standard that he wanted them to be." (J.A. at 89.) The dogs had not been fed, "the lights [were] out," and some dope had not been sold. According to Ms. Coleman, Moore became very upset when Ms. Moss informed him that Johnny said he was not going to sell the dope. He started cussing, saying nasty things, and putting down her son. At some point during his tirade, he pulled out a gun. When Ms. Coleman defended her son, Moore said "I ought to blow ... your head off." (J.A. at 91.) From this testimony, a reasonable jury could conclude that Moore's ire stemmed from his perception that Johnny Coleman was not operating an efficient drug house, that he brandished his gun to convey the message that Johnny had better improve the efficiency of the house and sell the unsold drugs or suffer the consequences, and that, in so doing, he facilitated the success of the conspiracy.
 
 
 6
 Count ten alleges that Moore violated Sec. 924(c) on or about June 19, 1993. At trial, William Davis testified that, in June 1993, Moore shot Davis in the leg. Davis also testified that, in 1992, he obtained three ounces of crack cocaine from Moore and that he never reimbursed Moore for this crack. (J.A. at 118.) A reasonable jury could infer that Moore shot Davis because Davis owed him money for the drugs and that use of a gun to shoot Davis facilitated the success of the conspiracy by spreading the message that Tim Moore shoots people who do not pay for their drugs.
 
 III.
 
 7
 Mr. Moore also contends that the district court erred by allowing various witnesses to testify concerning acts that were not related to the crimes charged. He claims that the court should have excluded this testimony under Fed.R.Evid. 404(b)[2] because it was evidence of prior bad acts and only served to place Moore in a bad light. To the contrary, all of the evidence that Moore objects to is either directly related to the crimes charged or provides context for the crimes charged and, thus, is admissible to prove that Moore committed the crimes charged. United States v. Mark, 943 F.2d 444, 448 (4th Cir.1991). None of it is, as Moore contends, the type of character evidence to which Rule 404(b) applies.
 
 
 8
 Specifically, Moore objects to trial testimony of Brunson Davis, Jacqueline Coleman, Stephen Roland, Anthony Stewart, Victoria Johnson, and Officer Graue. Brunson Davis testified that, when he was cleaning Moore's carpet, he noticed two small packets of what appeared to be drugs or cocaine on a table in the apartment and that, on one occasion, he attempted to arrange a drug deal between Moore and an unspecified person. This clearly is evidence of Moore's involvement in a drug conspiracy and is admissible for purposes of proving that charge. Davis also testified that, to his knowledge, Moore did not have a job, but that he owned a variety of cars and lived in a plush apartment. Such testimony can be introduced in narcotics prosecutions to show "illegal dealings and ill-gotten gains." United States v. Grandison, 783 F.2d 1152, 1156 (4th Cir.), cert. denied, 479 U.S. 845 (1986); United States v. Rawle, 845 F.2d 1244, 1248 (4th Cir.1988). Jacqueline Coleman testified that, on one occasion in her presence, Moore "started cussing, saying really nasty things and everything."[3] (J.A. at 90.) Ms. Coleman's testimony was part of a broader description of Moore's reaction to news that her son Johnny had said he was not going to sell some dope. She also testified that during his tirade against her son Moore pulled out a gun. Such evidence provides context for, and is admissible to prove, the conspiracy charged in count one and the Sec. 924 violations charged in counts six and seven. See Mark, 943 F.2d at 448. Stephen Roland testified that Moore shot him in the thigh several days after Roland sold crack to a potential customer of Moore's. This evidence is direct evidence showing that Moore violated Sec. 924 in June 1993 as charged in count ten. Anthony Stewart testified that he saw Moore with cocaine powder. He also testified that, in January 1993, he was present in Parris Moss' house when Moore and two others "pistol whipped" Johnny Coleman and someone named Carlos. This evidence is directly relevant to proving both the conspiracy charged in count one and the Sec. 924 violation charged in count eight. Victoria Johnson corroborated Stephen Roland's testimony that Moore shot him. Thus, like Roland's testimony, it is directly relevant to proving that Moore violated Sec. 924 in June 1993. Officer Graue testified that, when he and other officers searched a hotel room occupied by Moore and John Wayne Johnson, they found a small bag of marijuana, nine hundred "crack baggies," razor blades, a digital scale, a white plastic plate containing white residue, two handguns, and some ammunition. Most of this evidence is directly relevant to proving that Moore conspired to possess with the intent to distribute cocaine and is admissible to prove that charge. To the extent that it is not, it served merely to complete the officer's account of his encounter with Moore and was not introduced primarily to establish a propensity to commit the crimes charged. United States v. Kennedy, 32 F.3d 876, 886 (4th Cir.1994), cert. denied sub nom. Ingram v. United States, --- U.S. ----, 115 S.Ct. 939 (1995). Thus, none of the evidence that Moore objects to was introduced primarily to establish Moore's bad character, and the district court did not abuse its discretion by admitting it.
 
 IV.
 
 9
 Mr. Moore was convicted of six violations of 18 U.S.C. Sec. 924(c). He was sentenced to five years for the first conviction and twenty years consecutive for each subsequent conviction. Moore argues that the trial court erred in treating the subsequent Sec. 924(c) convictions as separate or subsequent convictions for purposes of imposing consecutive twenty year sentences. He contends that they cannot be treated as subsequent convictions, because they are all based on the same underlying conspiracy offense. Since Moore filed his appeal, however, we decided in United States v. Camps, 32 F.3d 102, 108 (4th Cir.1994), cert. denied, --- U.S. ----, 115 S.Ct. 1118 (1995), that multiple, consecutive sentences under Sec. 924(c) are appropriate whenever there have been multiple, separate acts of firearm use or carriage, even when all of those acts relate to a single predicate offense. Moore was convicted of multiple, separate uses of a firearm during the course of a drug distribution conspiracy. Thus, for the reasons set forth in Camps, the district court did not err in sentencing him to five years for his first Sec. 924(c) violation and twenty years consecutive for each of the five subsequent violations.
 
 V.
 
 10
 For the foregoing reasons, Moore's convictions and sentences are
 
 
 11
 AFFIRMED.
 
 
 
 [1]
 18 U.S.C. Sec. 924(c) provides:
 Whoever, during and in relation to any crime of violence or drug trafficking crime ... for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall ... be sentenced to imprisonment for five years.... In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years.... Notwithstanding any other provision of law, ... the term of imprisonment imposed under this subsection [shall not] run concurrently with any other term of imprisonment.
 
 
 [2]
 Fed.R.Evid. 404(b) provides:
 (b) Other crimes, wrongs, or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.
 
 
 [3]
 Moore also claims that Coleman testified that she bought dope from Moore in 1980, 1986, 1991-1993. There, however, is nothing in the record extract suggesting that Coleman bought drugs from Moore before 1991. In fact, the only evidence in the extract involving Ms. Coleman is of drug transactions that occurred during the course of the alleged conspiracy