70 F.3d 113
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
George Edward CANNON, Defendant-Appellant.
 No. 94-5176.
 United States Court of Appeals, Fourth Circuit.
 Argued Sept. 29, 1995.
Decided Nov. 20, 1995.
 
 ARGUED: Stephen Reveley Carley, Charlotte, North Carolina, for Appellant. Frank DeArmon Whitney, Assistant United States Attorney, Charlotte, North Carolina, for Appellee. ON BRIEF: Mark T. Calloway, United States Attorney, Charlotte, North Carolina, for Appellee.
 Before ERVIN, Chief Judge, and MURNAGHAN and WILKINS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 A jury convicted defendant-appellant George Cannon of one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. Sec. 841(a)(1), and one count of unauthorized acquisition and possession of food stamps, in violation of 7 U.S.C. Sec. 2024(b)(1). At trial, the district court allowed testimony from a police officer describing how the officer had identified Cannon from a police photograph which the officer linked to Cannon's prior arrest record. Cannon moved for a new trial, contending that the admission of the reference to his arrest record was so prejudicial and harmful that it precluded him from receiving a fair trial. The district court denied Cannon's motion. We affirm; any error that resulted from allowing the testimony as to Cannon's arrest record was harmless.
 
 I.
 
 2
 The United States charged Cannon with purchasing $100 of food stamp coupons from an undercover agent in exchange for .4 grams of crack cocaine and $10.00 ("the trade"). An undercover agent from the United States Department of Agriculture ("USDA") and two Charlotte undercover police officers were conducting a food stamp fraud investigation in Charlotte, North Carolina. In July 1992, acting on a tip, the three arranged a drug-buy from a man with the street name "Georgio." One officer exchanged food stamps with Georgio for money and drugs, while another officer watched. Shortly after the trade, the USDA agent debriefed the officers and wrote down a contemporaneous account of Georgio's physical characteristics. The government charged Cannon in a bill of indictment with the illegal trade.
 
 
 3
 At trial, Cannon presented a mistaken identity defense. The police officer who participated in the trade and the officer who witnessed it made in court identifications of Cannon. The officer involved in the trade noted that he remembered a distinctive scar on Cannon's forearm. The USDA agent's contemporaneous debriefing notes corroborated the officers' testimony. While not exact, the notes gave a fairly accurate description of the defendant including his height (within three inches), weight, age (within six years), a reference to a forearm scar (although on the wrong arm and several inches smaller), and black hair (while Cannon had dyed his hair blonde/orange at the time, the district court described a photo of him with "blonde/orange" hair as appearing as though he had black hair with blonde or strawberry hues). J.A. 142.
 
 
 4
 Additionally, one officer testified about how he and the other officer identified Cannon as "Georgio" from police photographs. As the officer described the chain of events leading up to Cannon's identification through a police photograph, he mentioned Cannon's arrest record.[1] As soon as the police officer mentioned Cannon's arrest record, the district judge interrupted him and told him to answer the question directly and not to ramble. Cannon's lawyers did not object and ask for a curative instruction at that point, nor did the district judge give one because he did not wish to draw attention to the remark. However, at the end of trial, the district court gave two cautionary instructions. First, the district court advised:
 
 
 5
 I caution you, members of the jury, that you are here to determine the guilt or innocence of the accused from the evidence in this case. The defendant is not on trial for any act or conduct or offense not alleged in the indictment.
 
 
 6
 J.A. 140. Second, the court also instructed the jury on the photographs, stating that:
 
 
 7
 you will recall that the police officers testified that they viewed a photograph of the defendant at the law enforcement center. The police collect pictures of many people from many different sources and for many different purposes. The fact that the police had the defendant's picture does not mean that he committed this or any other crime.
 
 
 8
 Id.
 
 
 9
 The jury returned a verdict of guilty. Cannon moved for a new trial contending that he was denied the right to a fair trial because of the admission of the officers' testimony as to his prior arrest record. The district court denied his motion reasoning that while the "arrest record" testimony was inadmissible because of its prejudicial nature, its admission was harmless error.
 
 II.
 
 10
 We review a lower court's denial of a motion for a new trial for abuse of discretion. United States v. Christy, 3 F.3d 765, 768 (4th Cir.1993); United States v. Arrington, 757 F.2d 1484, 1486 (4th Cir.1985). A new trial may be granted to a defendant "if required in the interest of justice," Fed.R.Crim.P. 33, and "only when the evidence weighs heavily against the verdict." Arrington, 757 F.2d at 1486.
 
 
 11
 The district court held that while the arrest record testimony was inadmissible under Rule 404(b) of the Federal Rules of Evidence, the testimony was harmless because it did not affect the jury's disposition of the case. See, e.g., United States v. Whittington, 26 F.3d 456, 466 (4th Cir.1994) (no reversible error where admission of evidence inadmissible under Rule 404(b) was harmless error); United States v. McMillon, 14 F.3d 948, 955 (4th Cir.1994) (same). Appellant Cannon argues that the trial court erred in its analysis of the harmless error issue. We disagree.[2]
 
 
 12
 It is well-established in the Fourth Circuit that in considering whether a nonconstitutional error is harmless:
 
 
 13
 "The proper test ... is whether we, in appellate review, can say 'with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error.' Kotteakos v. United States, 328 U.S. 750, 765 (1946). In applying this test, we must be mindful that it does not ask simply whether we believe that irrespective of the error there was sufficient untainted evidence to convict but, more stringently, whether we believe it 'highly probable that the error did not affect the judgment.' United States v. Nyman, 649 F.2d 208, 212 (4th Cir.1980) (quoting Roger J. Tray nor, The Riddle of Harmless Error 34-35 (1970))." United States v. Urbanik, 801 F.2d 692, 698-99 (4th Cir.1986).
 
 
 14
 United States v. Ince, 21 F.3d 576, 583 (4th Cir.1994). The essence of our inquiry is whether it is "highly probable" that the inadmissible comment "substantially sway[ed]" or "affect[ed]" the jury's verdict. Ince, 21 F.3d at 583.
 
 
 15
 We have found it helpful in making this assessment to examine three factors: (1) the centrality of the issue affected by the error; (2) the steps taken to mitigate the effects of the error; and (3) the closeness of the case. Ince, 21 F.3d at 583; Urbanik, 801 F.2d at 699; Nyman, 649 F.2d at 212. Applying those factors, we conclude that the error in the instant case was harmless.
 
 
 16
 The arrest record testimony went to the central issue at trial--identification of the individual who traded crack cocaine and money for food stamps. Cannon's prior arrest record pertains directly to his character, but it also bears indirectly on his identity as the one who engaged in the illegal trade. Thus, because the inadmissible statement went to the central issue at trial, it weighs in favor of a harmful error finding. The other two factors, mitigating factors and closeness of the case, however, weigh in favor of finding harmless error.
 
 
 17
 As for mitigating factors, the judge did not immediately give a curative instruction when the reference to Cannon's arrest record was uttered because he believed it would draw attention to the comment. Instead, the district judge interrupted and had the witness move on. Furthermore, Cannon's counsel did not object or ask for a curative instruction at the time the statement was made. See United States v. Mark, 943 F.2d 444, 449 (4th Cir.1991) (holding district court "does not commit reversible error by failing to give a limiting instruction for a defendant where one was never requested"). Thus, the district court concluded that the jury paid scant attention to the remark in the context of the overall trial.
 
 
 18
 More importantly, the district court gave cautionary instructions to the jury at the close of trial. Generally, "[undue] prejudice, if any, can be ... obviated by a cautionary or limiting instruction, particularly if the danger of prejudice is slight in view of the overwhelming evi dence of guilt." Mark, 943 F.2d at 449 (quoting United States v. Masters, 622 F.2d 83, 87 (4th Cir.1980)). In this case, three factors--(1) the isolated and passing nature of the remark; (2) the judge's judgment that the jury paid scant attention to the comment; and (3) the other overwhelming evidence against Cannon--lead to the conclusion that the curative instructions were sufficient to overcome prejudice from the reference to the arrest record.
 
 
 19
 The third and most crucial factor, the closeness of the issue at trial, also weighs in favor of finding harmless error. Ince, 21 F.3d at 584; Urbanik, 801 F.2d at 699. In evaluating this factor, we look at the other evidence to see if it was sufficient to convict, as well as "whether it was sufficiently powerful in relation to the tainted evidence to give 'fair assurance' that the tainted evidence did not 'substantially sway' the jury to its verdict." Urbanik, 801 F.2d at 699.
 
 
 20
 The district court held that the issue was not close. Its determination of the closeness factor is a "highly judgmental process, involving much more of feel than of science." Id. Therefore, its judgment that the issue was not close should not be overturned in the absence of strong evidence to the contrary.
 
 
 21
 The district court relied on persuasive evidence indicating that Cannon was the man who had traded crack cocaine and money for food stamps: (1) two police officers' in court identifications of Cannon; (2) the fact that one officer remembered Cannon's distinctive scar; and (3) a corroborating contemporaneous description in the USDA agent's debriefing notes. Cannon has pointed to the discrepancies in the USDA agent's written description as evidence that the identification question was close. As explained earlier, those discrepancies were minor. Indeed, if the written description had been identical, without any minor error, it would more than likely raise a suspicion that something was awry. Human memory and observation are not infallible. Thus, for the foregoing reasons, we conclude that the reference to Cannon's arrest record was harmless error.
 
 
 22
 Cannon also argues that the district court committed reversible error because it applied a four-part test set forth by the Federal Court of Appeals for the First Circuit instead of our three factors. While we decline to adopt the First Circuit's test or to condone its use, we do not find that the district court committed reversible error, because in our assessment the error was harmless. Remand, therefore, is unnecessary.
 
 
 23
 Accordingly, the judgment of the district court is
 
 
 24
 AFFIRMED.
 
 
 
 [1]
 The trial colloquy proceeded as follows:
 Q. Did there come a time, that day, when you and Officer Jackson left Special Agent Heath and went to do further identification of the defendant?
 A. Yes, sir.
 Q. What, exactly did you and Officer Jackson do?
 A. Well, all we knew was the subject lived on Seigle Avenue, and we had an address, and his street name was Georgio. So we had to find out some way of finding out who Georgio really was. And Officer Jackson found a car in the driveway of this address on Seigle Avenue and we ran the tag and it came back to a subject living at that address. We ran his name into the computer down at the Police Department and the subject had been arrested numerous times. We ran the last arrest number and the Charlotte Police Department has a file system with pictures in it for--
 COURT: Wait a minute. Just answer the questions which are asked of you. Let's don't get into a lot of elaboration about anything else. Go ahead.
 Q. Was there some information at the Charlotte Police Department that allowed you to identify this person?
 A. Yes, sir.
 Q. From that information, was there a photographic record in the Police Department that you could reference?
 A. Yes, sir.
 Q. What, exactly, did you do with that photographic record?
 A. It printed out a picture of the subject that his tag came back to, and it was the same subject that I had purchased the drugs from earlier with the food stamps.
 J.A. 67-68.
 
 
 [2]
 We need not reach the issue of whether the reference to Cannon's arrest record was admissible because even if it were inadmissible, the statement is harmless