7 F.3d 228
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Gustavo Antonio URRUNAGA, Defendant-Appellant.
 No. 92-5516.
 United States Court of Appeals,
Fourth Circuit.
 Argued: April 2, 1993.
Decided: October 6, 1993.
 
 Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro. Norwood Carlton Tilley, Jr., District Judge. (CR-91-54-G)
 Walter T. Johnson, Jr., Greensboro, North Carolina, for Appellant.
 Paul Alexander Weinman, Assistant United States Attorney, Greensboro, North Carolina, for Appellee.
 Robert H. Edmunds, Jr., United States Attorney, Greensboro, North Carolina, for Appellee.
 M.D.N.C.
 AFFIRMED.
 Before HAMILTON, Circuit Judge, CHAPMAN, Senior Circuit Judge, and FABER, United States District Judge for the Southern District of West Virginia, sitting by designation.
 PER CURIAM:
 
 OPINION
 
 1
 Gustavo Antonio Urrunaga challenges his conviction and sentence for conspiracy to possess with intent to distribute cocaine base, in violation of 21 U.S.C. § 846. Urrunaga challenges his conviction on two grounds: (1) that the court erred when it denied his motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure; and (2) that the court erred in admitting evidence of conduct that occurred prior to the commencement of the conspiracy period alleged in the indictment. Urrunaga further challenges the sentence imposed in this case alleging that the district court erred in enhancing his guideline range based on the district court's finding that he played a leadership role in the criminal activity pursuant to section 3B1.1(a) of the guidelines. We conclude that the alleged trial errors and errors in sentencing raised by Urrunaga are without merit, and affirm his conviction and the sentence imposed by the district court.
 
 
 2
 * The evidence adduced at trial in this case established an ongoing practice of drug trafficking in which the defendant Urrunaga served initially as a supplier and subsequently as a seller of crack cocaine. Beginning at least as early as November 1989, Urrunaga traveled from New York to Greensboro, North Carolina, on a regular basis to distribute crack cocaine to, among others, several students at North Carolina A & T State University. In November 1989, Urrunaga arrived at the apartment of an A & T State University student, Cedric McLaurin, with a quantity of cocaine powder. Upon paying McLaurin $200 for the use of his apartment, Urrunaga cooked the cocaine powder into crack. At trial, McLaurin testified that he had witnessed Urrunaga producing crack cocaine in such a manner and subsequently weighing it on a set of triple-beam balance scales. Urrunaga, along with McLaurin and three other students at A & T State University,Willie Gallop, Reggie Clark and Al Goins, then took the crack cocaine to the apartment of Shirley Harris Johnson in a complex known as "The Grove." The crack was distributed among Gallop, Clark, Goins and two other individuals known as Jerome and "Goat." Urrunaga and McLaurin subsequently returned to Ms. Johnson's apartment where Urrunaga collected money from Jerome and Goat and supplied additional crack to Jerome and Goat as well as Ms. Johnson.
 
 
 3
 In January 1990, Urrunaga again traveled to McLaurin's apartment and attempted unsuccessfully to cook cocaine into crack. At a time subsequent to January 1990, Urrunaga supplied crack to Clark, Gallop, Goins, McLaurin, Jerome, Goat and Johnson to be sold in The Grove.
 
 
 4
 In mid to late April 1990, during a celebration at North Carolina A & T State University known as "Aggiefest," Urrunaga met with McLaurin and Gallop in Gallop's apartment. At that time McLaurin complained that he was not being supplied sufficient amounts of crack to sell. Urrunaga responded to McLaurin's complaints by providing him with an eighth of an ounce of crack and promising to provide him with additional amounts of crack in the future. During the April 1990 trip, Urrunaga was accompanied by codefendant Hector Luis Colon. Colon made several periodic trips from New York to Greensboro with Urrunaga in a white Toyota Corolla station wagon. Urrunaga and Colon apparently concealed cocaine in the taillights of the Toyota Corolla.
 
 
 5
 Following the end of the Spring semester in May of 1990, Gallop and McLaurin shared an apartment. Gallop began to make periodic trips to New York and returned from such trips with quantities of crack which he, McLaurin and Clark sold in The Grove. McLaurin subsequently moved from the apartment he shared with Gallop into a new apartment. At trial, McLaurin identified the phone bill from his apartment and further identified Urrunaga's phone number in New York as having been called from his apartment. Subsequent to August 1, 1990, McLaurin, Gallop, Urrunaga, and an individual named Armando Porteau, were present in Gallop's apartment. Drugs were also present in Gallop's apartment at that time. Urrunaga and Porteau argued over a missing supply of drugs at this meeting. This was the first instance in which McLaurin had met Porteau who took McLaurin aside and told him that he could supply him with additional quantities of drugs. Colon and Gallop then took the drugs present at the meeting and sold them in The Grove and in a community known as English Village.
 
 
 6
 Approximately one month after McLaurin met Porteau, McLaurin met an individual known as Boo, whose true name is apparently Alphonso Kennedy, at Willie Gallop's residence. Boo had been accompanied to Willie Gallop's apartment by another individual named Willie who Urrunaga introduced as his cousin. Also present at this meeting were drugs which had been transported from New York to North Carolina in a liquor bottle.
 
 
 7
 On October 29, 1990, McLaurin, Clark, Gallop and an individual named Angelo Underwood traveled to New York to purchase a kilogram of crack from Porteau. Porteau took them to the home of an individual known as "Coco" where Gallop, Porteau and Coco went into a back room. Following this meeting, Gallop, Porteau and McLaurin left the home with a kilogram of crack. Gallop and McLaurin, accompanied by Clark and Underwood, returned to Greensboro with the kilogram of crack and were joined in Greensboro approximately two days later by Porteau and Coco. A large portion of the crack was distributed to Urrunaga, Colon, Clark, Gallop, and McLaurin for sale in Greensboro. An additional portion of the crack purchased during the October 29, 1990 trip was stored in a speaker box in McLaurin's apartment and was seized by DEA agents on November 5, 1990.
 
 
 8
 On March 13, 1991, Urrunaga was arrested at the home of Valeria Chavis. On March 25, 1991, the grand jury for the Middle District of North Carolina returned an eight-count indictment against Urrunaga, Colon, Gallop, Clark and Johnson. Count One of the eight-count indictment alleged a conspiracy to possess with intent to distribute quantities of crack, in violation of 21 U.S.C.A.ss 846 and 841(b)(1)(A). Counts Two through Eight charged the defendants with possession with intent to distribute crack on various dates. The United States subsequently dismissed Counts Two, Three, Four, Five and Eight of the indictment as to Urrunaga. At trial the jury found Urrunaga guilty of Count One, alleging conspiracy to possess with intent to distribute crack, and not guilty of Count Seven, which would be renumbered Count Two at trial, alleging that the defendant had possessed with intent to distribute cocaine on October 30, 1990. On June 22, 1992, Urrunaga was sentenced to a term of imprisonment of 320 months and a term of supervised release of five years.
 
 II
 
 9
 As his first point of error, Urrunaga maintains that the district court erred in denying his motion for judgment of acquittal pursuant to Rule 29(a) of the Federal Rules of Criminal Procedure. Rule 29(a) states, in pertinent part:
 
 
 10
 The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.
 
 
 11
 Urrunaga maintains that he was entitled to a judgment of acquittal as to the conspiracy count on the basis that the government had failed to meet its burden of proving a singular conspiracy involving Urrunaga. Urrunaga is correct in his assertion that the United States bore the burden of proving a single conspiracy as charged in the indictment. United States v. Leavis, 853 F.2d 215, 218 (4th Cir. 1988). However, the question of whether a single conspiracy exists is one "singularly well-suited to resolution by the jury." Id. at 218; United States v. McGrath, 613 F.2d 361, 367 (2d Cir. 1979); cert. denied, 446 U.S. 967 (1980). "If the jury is properly instructed, the finding of a single conspiracy must stand unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury so to find." United States v. Urbanik, 801 F.2d 692, 695 (4th Cir. 1986).
 
 
 12
 During oral arguments before the court, counsel for Urrunaga admitted that the jury was charged on the issue of single or multiple conspiracies. In neither his brief nor during oral argument did Urrunaga challenge the substance of such instruction. Therefore, the jury's finding of a single conspiracy must stand unless the evidence, taken in the light most favorable to the government, would not allow a reasonable jury to find a single conspiracy. The court concludes that the evidence adduced at trial would clearly permit a reasonable jury to conclude that the single conspiracy existed.
 
 
 13
 A single conspiracy is proven when it is shown that there is "one overall agreement," or "one general business venture." Leavis, 853 F.2d at 218. The question of whether single or multiple conspiracies exist depends "upon the overlap of key actors, methods, and goals." Id. The testimony at trial is sufficient to establish the existence of a single agreement and business venture. Although Urrunaga's role within the conspiracy changed from supplier to seller, the evidence reflects that he maintained constant participation throughout the period of the conspiracy. Even after McLaurin, Gallop and Clark began obtaining crack directly from Porteau and Coco, the evidence establishes that Urrunaga actually sold a portion of such crack. Regardless of Urrunaga's role in the conspiracy, it is clear from the evidence that the overall goal of the conspiracy, to engage in extensive drug trafficking in the Greensboro area, remained constant. In addition, Urrunaga's participation, as well as that of McLaurin, Gallop, Clark, Johnson, and Porteau was also constant throughout the conspiracy. In United States v. Urbanik, this court was faced with a similar question regarding the existence of a single conspiracy. In holding that the jury could properly have concluded that a single conspiracy existed in that case, the court held: "The principals may have performed their roles at different points in the distribution network, but the evidence suffices to support the inference of a single large conspiracy, the object of which was the wide-scale possession and distribution of marijuana and cocaine." Urbanik, 801 F.2d at 696. Similarly, in this case the evidence supports the inference of a single large conspiracy to engage in the wide-scale trafficking of cocaine and crack from New York to the Greensboro area, primarily to be sold in The Grove and English Village. The issue of whether the evidence supported a multiple or singular conspiracy is properly placed before the jury and the jury decided that a single conspiracy existed. Accordingly, because we find sufficient evidence to support the jury's conclusion that a single conspiracy existed, we find no merit to Urrunaga's position that the district court erred in denying his motion pursuant to Rule 29 of the Federal Rules of Criminal Procedure.*
 
 III
 
 14
 Urrunaga further contends that the district court erred in admitting evidence of events which took place prior to the date of the beginning of the conspiracy as charged in the indictment. Specifically, Urrunaga objects to the testimony of Reginald Clark regarding a conversation with Willie Gallop concerning Urrunaga's efforts to cook cocaine into crack. The record indicates that counsel for Urrunaga objected to the admission of such evidence at trial and the district judge overruled his objection, indicating that if the evidence was not actually a part of the conspiracy itself, counsel for Urrunaga could move for a limiting instruction under Rule 404(b).
 
 
 15
 Rule 404(b) of the Federal Rules of Evidence permits the admissibility of extrinsic acts when they are "(1) relevant to an issue other than character, (2) necessary, and (3) reliable." United States v. Mark, 943 F.2d 444, 447 (4th Cir. 1991); United States v. Rawle, 845 F.2d 1244, 1247 (4th Cir. 1988). Any such evidence which is relevant to the crime charged is admissible "except that which tends to prove only criminal disposition." Mark, 943 at 447; United States v. Masters, 622 F.2d 83, 85 (4th Cir. 1980). With regard to the first of the three elements set forth in Mark, a review of the testimony challenged by Urrunaga reveals that such evidence is relevant to issues other than Urrunaga's character. As this court noted in Mark, "a defendant's knowledge and intent are clearly elements which the prosecution must establish to prove a conspiracy to violate 21 U.S.C. § 841(a)(1)." Mark, 943 F.2d at 448. By entering a plea of not guilty to the conspiracy charge, Urrunaga placed such elements in issue. Id. In order to be relevant to such factors as Urrunaga's knowledge and intent, the evidence challenged by Urrunaga "must be sufficiently related to the charged offense." Id.; Rawle, 845 F.2d at 1247, n.3. In the present case, evidence of Urrunaga's efforts to cook cocaine into crack prior to the date charged in the indictment are relevant to his knowledge of the process and distribution scheme which constituted the ongoing conspiracy and his intent to violate the laws governing controlled substances by producing and distributing crack. Such evidence is sufficiently related to the conspiracy charged in the indictment because it involved distribution activities between Urrunaga and the same codefendants with whom he carried on the illegal trafficking scheme.
 
 
 16
 Clark testified that Urrunaga brought a quantity of cocaine from New York to the Greensboro area in order to cook it into crack for distribution. Clark further testified that Urrunaga had given him drugs to sell as early as 1989. Because Urrunaga followed substantially the same procedure during the period of time charged in the conspiracy count as he did during the time to which Clark testified, we find that the evidence set forth in Clark's testimony was sufficiently related to the conspiracy charged in the indictment and was relevant to issues other than Urrunaga's character.
 
 
 17
 With regard to the requirement that Rule 404(b) evidence be necessary in order to be admissible, this court has held that evidence is necessary and admissible where it is "an essential part of the crimes on trial," or where it "furnishes part of the context of the crime." Mark, 943 F.2d at 448; Rawle, 845 F.2d at 1247, n.4; Masters, 622 F.2d at 86; United States v. Smith, 446 F.2d 200, 204 (4th Cir. 1971). The testimony challenged by Urrunaga certainly furnishes part of the context of the crime. The evidence of Urrunaga's trips from New York to the Greensboro area and his efforts to cook cocaine into crack in the apartment of one of his coconspirators in 1989 certainly sets the context for Urrunaga's continued transportation of illegal drugs from New York to Greensboro and the expansion of his practice to include other codefendants within the conspiracy period alleged in the indictment. Accordingly, we find that the evidence is necessary to show Urrunaga's involvement in the conspiracy and to illustrate the course and process by which the conspiracy developed.
 
 
 18
 Finally, with regard to the requirement that extrinsic act evidence be reliable in order to be admissible pursuant to Rule 404(b), we find that the district court was fully within its discretion in admitting the evidence as reliable. The testimony challenged by Urrunaga was that of Reginald Amos Clark, who was a codefendant in this case. Because Clark was making a statement against his own interest in testifying as to his involvement with Urrunaga in illegal drug trafficking activity, the district court could reasonably have concluded that his statements were reliable. In light of our finding that the testimony challenged by Urrunaga was relevant to a purpose other than showing Urrunaga's character, and that such evidence was necessary and reliable, we find that the district court did not err in admitting such evidence.
 
 
 19
 In addition, we find that the evidence was also admissible pursuant to Rule 403 of the Federal Rules of Evidence. Rule 403 provides that evidence, even if relevant, may be inadmissible if its probative value is substantially outweighed by the danger of unfair prejudice. In the present case, we find that the evidence to which Urrunaga objected was clearly relevant to material issues and was, thus, probative. We further find that the testimony was not of such a prejudicial nature as to create "a genuine risk that the emotions of the jury will be excited to irrational behavior." United States v. Percy, 765 F.2d 1199, 1204 (4th Cir. 1985); Masters, 622 F.2d at 87. Therefore, we find that the probative value of the evidence substantially outweighs any danger of unfair prejudice and, thus, the district court properly admitted the challenged testimony.
 
 
 20
 While it is unclear whether Urrunaga specifically alleges that the district court erred in failing to give the jury a limiting instruction on the evidence submitted pursuant to Rule 404(b), Urrunaga does state that he failed to request such an instruction because the district judge did not state whether the challenged testimony was, in fact, being admitted pursuant to Rule 404(b). During the trial, Urrunaga's counsel objected to the testimony of Reginald Clark as being outside of the period of the conspiracy alleged in the indictment. The court stated that its admission of the evidence was "not necessarily" made pursuant to Rule 404(b), but that such evidence may, in fact, have constituted part of the actual conspiracy charged in the indictment. In overruling Urrunaga's objection to the evidence, the district court stated: "If it turns out it's not part of the conspiracy, you may move for a limiting instruction under 404(b) to limit it to 404(b)." It is clear that the district court's statement left the door open to Urrunaga's counsel to move for such a limiting instruction. However, the record does not reflect that counsel ever requested such an instruction. We are not convinced that the district court was required to actually rule that the admission of the evidence was made pursuant to Rule 404(b) in order to place Urrunaga's counsel on notice that a request for a limiting instruction under Rule 404(b) may have been appropriate. Furthermore, this court has held that a district court does not commit reversible error by failing to give a limiting instruction for a defendant where one was never requested. Mark, 943 F.2d at 449. Because the district court clearly invited Urrunaga's counsel to move for a limiting instruction, and no such request was made, Urrunaga cannot now claim that the district court's failure to give such an instruction was reversible error.
 
 IV
 
 21
 Urrunaga's final argument involves the district court's enhancement of his base offense level at sentencing by four levels for his leadership role pursuant to section 3B1.1(a) of the guidelines. A determination by the district court of a defendant's role in the offense is a factual determination reviewable under the clearly erroneous standard. United States v. Arnoldt, 947 F.2d 1120, 1128 (4th Cir. 1991); cert. denied, 112 S. Ct. 1666 (1992). Urrunaga apparently does not challenge the fact that there were five or more individual participants who were criminally responsible for the commission of the offense. At the sentencing hearing the following colloquy took place between the court and Urrunaga's counsel, Mr. Johnson:
 
 
 22
 MR. JOHNSON: If Your Honor please, clearly five people were-more than five people were mentioned in various stages. Of course, the jury found Ms. Johnson a part of the conspiracy; she contended she was not. But that issue has been decided.
 
 
 23
 THE COURT: And I would find that she was also.
 
 
 24
 MR. JOHNSON: All right. And the-beyond that, the other players, I think, were pretty well identified.
 
 
 25
 Sentencing Transcript at 25.
 
 
 26
 Essentially, Urrunaga challenges the four-level enhancement on the basis that the district court imposed such enhancement upon its finding that Urrunaga had recruited others to participate in the criminal offense. Urrunaga maintains that the evidence does not support a finding that he engaged in such recruitment activities. Upon a review of the testimony below, we do not find that the district court's conclusion that Urrunaga served as a recruiter in the offense is clearly erroneous.
 
 
 27
 In addition, we find that recruitment of accomplices is not the only factor to be considered by a sentencing judge in determining the defendant's role in the offense nor was it the only factor considered by the judge in this case. Application Note 3 accompanying United States Sentencing Guideline Section 3B1.1 states:
 
 
 28
 The factors the court should consider include the exercise of decision-making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation and planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others.
 
 
 29
 The transcript of the sentencing proceedings in this case reflects that the trial court did, in fact, consider several of the factors set forth in application note 3 in reaching its conclusion that Urrunaga was subject to a four-level enhancement for his role in the offense. Specifically, the district court held:
 
 
 30
 THE COURT: Well, I find the evidence supports, by a preponderance, that he was the organizer in recruiting others and in making the decisions of who got certain amounts to sell, and in being the initial supplier, until the latter stages when Mr. Porteau came. And I find that the four-level increase is warranted.
 
 
 31
 Sentencing Transcript at 27. The testimony below clearly supports the district court's finding that Urrunaga made the decisions as to how much cocaine was distributed to each of his coconspirators. Specifically, McLaurin testified that he spoke with Urrunaga when he felt that he was not being supplied sufficient amounts of cocaine to sell in The Grove and requested that Urrunaga supply additional quantities to him. In addition, the evidence adduced at trial supports the district court's finding that Urrunaga was the initial supplier of cocaine, having transported cocaine from New York to the Greensboro area for distribution to his coconspirators at least until the time at which McLaurin and Gallop began obtaining crack directly from Porteau. Accordingly, we find that the district court was not clearly erroneous in finding that Urrunaga was an organizer of the criminal activity forming the basis of the offense conduct, pursuant to section 3B1.1 of the guidelines.
 
 
 32
 Finding no merit in Urrunaga's assignments of error, we affirm Urrunaga's conviction and sentence as imposed by the district court.
 
 AFFIRMED
 
 
 *
 Urrunaga also raised the issue of multiple conspiracies at his final disposition hearing on June 22, 1992. Having considered counsel's argument regarding such issue, the district court concluded: "All right, sir. I understand your argument. My view is different from that. And I believe that the same actors are dealing with one another during the same time frame; only the source of supply changed, and the leadership changed. But other than that, the same people continued working with each other for a common goal, a common purpose, within the same time frame. And so I will find there is one conspiracy." Transcript of Sentencing Proceedings before the Honorable N. Carlton Tilley, Jr., June 22, 1992, at 20 (hereinafter "Sentencing Transcript"). The district court's conclusions with regard to the question of sentencing further support our conclusion that its denial of Urrunaga's motion for acquittal was proper